**FILED**
**Lucinda B. Rauback, Clerk**
**United States Bankruptcy Court**
**Augusta, Georgia**
***By jpayton at 1:46 pm, Sep 28, 2018***

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

|  |  |  |
|---|---|---|
| IN RE:<br>ALAN DEMETRIUS RICHARDSON | ) )<br>) | Chapter 7 Case<br>No. <u>16-11197</u> |
| Debtor | )<br>) | |
| ALAN D. RICHARDSON | )<br>) | Adversary Proceeding<br>No. <u>17-01014</u> |
| Plaintiff | )<br>) | |
| v. | )<br>) | |
| EDUCATIONAL CREDIT MANAGEMENT<br>CORPORATION | )<br>)<br>) | |
| Defendant | )<br>) | |

## OPINION AND ORDER

Before the Court is a Motion for Summary Judgment filed

by Educational Credit Management Corporation ("ECMC") seeking a

determination that the student loan of Alan Demetrius Richardson ("Debtor") is not dischargeable. Debtor contends the debt creates an undue hardship and therefore is dischargeable pursuant to 11 U.S.C. §523(a)(8). This is a core proceeding under 28 U.S.C. §157(b)(2)(I) and the Court has jurisdiction pursuant to 28 U.S.C. §1334. For the following reasons, ECMC's Motion for Summary Judgment is granted.

### UNDISPTUED FACTS[1]

Debtor is a 49-year-old divorcee residing with his 18-year-old son in a two-bedroom, two bath apartment. Dckt. No. 44, Richardson Dep., p. 51-52. ECMC is a guarantor in the Federal Family Education Loan Program ("FFELP") and provides specialized guarantor services, including accepting transfer of title of certain student loans where the student loan borrower has filed bankruptcy. Dckt. No. 44, Ex. 2, Matheny Aff., ¶1.

On or about October 5, 2000, Debtor executed a $104,886[2] Promissory Note (the "Note") for a Consolidation Loan. Dckt. No. 44, Ex. 2, Matheny Aff., ¶4, and copy of the Note, attached thereto

---

[1] The undisputed facts are largely taken from Debtor's Answer to ECMC's Reply to Debtor's Response to ECMC's Motion for Summary Judgment. See Docket No. 52.

[2] Throughout this opinion, numbers have been rounded to the nearest dollar amount.

as Exhibit "A"; Dckt. No. 44, Ex. 3, Answer to Interrogatory No. 17. Utilizing the student loan proceeds, Debtor has obtained two Bachelor's degrees -- Bachelor's degree in Biology and a Bachelor's degree in Medical Technology -- and attended two years of medical school. Dckt. No. 44, Ex. 3, Answer to Interrogatory No. 15. Debtor attended Mercer University from 1986-1992, Mercer College of Medicine from 1997-1999, and Augusta University from 1995-1997. Dckt. No. 44, Ex. 3, Answer to Interrogatory No. 15.

He was dismissed from medical school in 1999 due to poor academic performance. Answer to Interrogatory No. 26; Dckt. No. 44, Richardson Dep., pp. 12-14. Debtor attributes his poor academic performance to the fact that medical school and its educational model were challenging for him. Id., Answer to Interrogatory No. 26. Initially, he struggled academically and had to repeat his first year. Id. During this repeat year, Debtor faced a health scare when a lump was found in his thyroid requiring surgery. Initially, he was unable to take a final exam due to surgery and then he did not pass the make-up exam that he was required to pass to remain in medical school. Dckt. No. 44, Richardson Dep. p. 13-14; Dckt. No. 44, Ex. 3, Answer to Interrogatory No. 26.

Thereafter, Debtor continued to suffer from thyroid

tumors and ultimately was diagnosed with thyroid cancer. His thyroid was removed and he takes medication for this condition. Debtor also has been to the emergency room three times in the past eighteen months for atrial fibrillation and suffers from depression. Debtor is seeing a therapist and taking medication to treat his depression.

Fortunately, since leaving medical school in 1999, Debtor has been able to work full-time except for a brief period of unemployment in 2015. He has been employed by Augusta University as a Supervisory Medical Technologist since 2015. His annual salary is $72,800. Dckt. No. 44, Ex. 3, Answer to Interrogatory No. 4. Debtor generally works forty hours per week. His schedule is somewhat flexible in that he can work his eight-hour shift any time between 6:00 a.m. and 5:00 p.m. Dckt. No. 44, Richardson Depo., pp. 29-30. In addition to working full time, Debtor also is attending school part-time pursuing a Master's degree in Business Administration in order to keep his current position and potentially advance. Dckt. No. 44, Richardson Dep. p. 78-80.

Debtor's annual adjusted gross income has been as follows:

| YEAR | AGI |
| --- | --- |
| 2012 | $107,570 |
| 2013 | $127,522 |

AO 72A
(Rev. 8/82)

| 2014 | $111,369 |
|------|----------|
| 2015 | $139,804 |
| 2016 | $54,921 |
| 2017 | $65,591 |

Dckt. No. 44, Richardson Dep., Exs. 8-13.  Debtor's annual salary for 2018 is expected to be $72,000.  His gross monthly income is $6,209 and his net is approximately $3,713/month after the following automatic payroll deductions:

| DEDUCTION | AMT |
|-----------|-----|
| FICA | $354 |
| FICM | $83 |
| FIT | $767 |
| Georgia Withholding | $279 |
| Accidental Life Fam | $15 |
| Child Life Ins. | $.90 |
| Dental Ins.(self and child) | $65 |
| Life/AD&D 4x | $80 |
| Medical Ins. | $314 |
| Tax Life Offset | $6 |
| **VALIC (Vol. retirement plan contribution)** | $372 |
| VALIC Loan 403B (Loan for Master's Degree) | $136 |
| VALIC Match (employer match) | $310 |
| Vision Ins.(self and child) | $24 |
| **Total Deductions:** | $2,496 |

Dckt. No. 52 (emphasis added).

Debtor's monthly household expenses are as follows:

| | March 2017 | April 2017 | May 2017 | June 2017 | July 2017 | Aug. 2017 | Sept 2017 | Oct 2017 | Nov 2017 | Dec 2017 | Jan 2018 | Feb 2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rent | 645 | 645 | 645 | 645 | 645 | 645 | 655 | 655 | 655 | 655 | 655 | 655 |
| Electric | 142 | 0 | 72 | 134 | 77 | 80 | 77 | 72 | 62 | 72 | 105 | 118 |
| Telephone | 83 | 83 | 83 | 83 | 83 | 83 | 83 | 83 | 48 | 62 | 62 | 62 |

AO 72A
(Rev. 8/82)

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cars | 250 | 1005 | 108 | 98 | 102 | 311 | 305 | 290 | 307 | 348 | 260 | 1017 |
| Insurance | 86 | 86 | 86 | 179 | 0 | 88 | 89 | 89 | 89 | 89 | 89 | 89 |
| Groceries | 64 | 79 | 149 | 327 | 107 | 140 | 455 | 121 | 382 | 247 | 356 | 354 |
| Meals Out | 690 | 641 | 412 | 404 | 274 | 371 | 185 | 356 | 171 | 227 | 432 | 286 |
| Recreation | 156 | 23 | 420 | 30 | 88 | 51 | 0 | 145 | 10 | 130 | 82 | 10 |
| Medicine | 10 | 8 | 30 | 60 | 0 | 10 | 30 | 145 | 10 | 130 | 82 | 10 |
| Clothing | 0 | 503 | 0 | 151 | 0 | 22 | 0 | 221 | 30 | 40 | 489 | 182 |
| Child Care | 565 | 565 | 565 | 565 | 565 | 565 | | | | | | |
| Other | 1327 | 1258 | 1419 | 1271 | 1286 | 1604 | 750 | 733 | 290 | 1093 | 3404 | 564 |
| Cable | 51 | 51 | 51 | 56 | 51 | 81 | 81 | 81 | 81 | 89 | 89 | 89 |
| Installment | | | | | | | 100 | 100 | 100 | 100 | 100 | 100 |
| Child Support | | | | | | | 565 | 565 | 565 | 565 | 565 | 565 |
| TOTAL | 4069 | 4947 | 4040 | 4003 | 3278 | 4051 | 3375 | 3656 | 2800 | 3847 | 6770 | 4101 |

Dckt. No. 55 (emphasis added); Answer to Interrogatory No. 21; Dckt. No. 44, Ex. 4, Supplemental Responses.[3] As for the various expense categories, Debtor explained:

> "**Cars**" is the category for maintenance, repair and gas expenses for his 2006 Cadillac. Dckt. No. 44, Richardson Dep. pp. 83-86;

> "**Other**" is for expenses that do not fit into the other categories and "does not include any of his basic necessities." Id. at 87-88; Dckt. No. 52, ¶40.

> "**Installment**" reflects a payment of $100/month Debtor contributes to his 18-year-old son's savings account. Id. at 88-89. This monthly payment has fluctuated over the last year from $0 to $100. Id. Debtor's son does not suffer from any mental or physical disability. Dckt. No. 55; Answer to Interrogatory No. 9. In his deposition, Debtor estimated the current balance in this account to be $1,200. Id. at pp. 88-89;

> "**Child Support**" of $565/month ceased in May 2018 when Debtor's son graduated from high school. Id. at 100-101.

With these deductions, Debtor's net monthly income after the payroll

---

[3] This household expense chart was prepared by Debtor and his counsel using Debtor's monthly bank statements.

deductions and expenses is approximately negative $343, without accounting for the $1,432/monthly student loan payment.[4]

Debtor does not dispute that he may be eligible to participate in consolidation programs for his student loan, such as the Ford Program, but he disputes being able to afford any of the repayment options. Dckt. No. 44, Ex. 2, Matheny Aff., ¶13. According to ECMC, there are several options under the Ford Program: the fixed amortized 30-year payment (the "Standard Payment"); income contingent repayment plan ("ICRP"); an income-based repayment plan ("IBR"); and a revised pay as you earn plan ("REPAYE"). Dckt. No. 44, Ex. 2, Matheny Aff., ¶16. Under the ICRP, IBR, and REPAYE programs, a borrower's repayment amount is adjusted annually based on a borrower's adjusted gross income ("AGI") and the poverty level for the borrower's family size from the previous year. Dckt. No. 44, Ex. 2. Matheny Aff., ¶16. The ICRP, IBR, and REPAYE payments may be higher when the borrower's income is higher and lower when the borrower's income is lower. The maximum repayment period for the ICRP and the IBR is twenty-five (25) years. The maximum repayment period for the REPAYE program is twenty (20) years. The monthly ICRP payment is

---

[4] $3,713(net monthly income after payroll deductions) - $4,056 (average monthly expenses) = -$343

calculated as AGI minus 100% poverty level for borrower's family size multiplied by 20%/12. The monthly IBR payment is calculated as AGI minus 150% poverty level for borrower's family size multiplied by 15%/12. The monthly REPAYE payment is calculated as AGI minus 150% poverty level for borrower's family size multiplied by 10%/12. At the end of the applicable repayment period, any portion of the loan that is remaining is forgiven.

Over the years, Debtor has made payments totaling $134,492 on the student loan and received 78 months of forbearance. As of May 21, 2018, the balance on the student loan was $224,470. He filed the instant Adversary Proceeding seeking to discharge his student loan obligation pursuant to 11 U.S.C. §523(a)(8) as an "undue hardship."

If Debtor were to consolidate through the Ford Program, he would be eligible for deferments and forbearances. Dckt. No. 44, Ex. 2, Matheny Aff., ¶21. Upon consolidation, Debtor would be given a fixed annual interest rate of 8%. Id. According to ECMC, based upon Debtor's 2017 Adjusted Gross Income of $65,591 and a family size of one, his monthly IBR payment would be $594; his monthly ICRP payment would be $892; and his monthly REPAYE payment would be $396. Id. at ¶22.

Debtor contends with a current yearly income of $72,800[5] and loan balance of $224,470 with 8% annual interest rate, his loan payment options are as follows:  $1,647 per month under the Standard Plan; $1,496 for the his first month payment under the Graduated Plan and $2,026 for his last month; $1,732 per month under the Extended Fixed Plan; $1,496 per month under the Extended Plan first month payment and $2,318 for his last month; and $684 for the IBR first month payment and $2,536 for his last month.  Dckt. No. 48. Debtor says he cannot afford any of the repayment amounts provided by the Federal Student Aid Estimator available on the Federal Student loan website.  He also contends that by refinancing his student loan under one of the Federal loan programs, he would be extending his loan payments 20-30 years with payments ranging from $684-$2,536 each month and making him between the ages of 70-80 years old before the loan would be repaid or forgiven.  Debtor further argues that with the lowest monthly payment option of $684, he would pay back $429,849 for 25 years and after that $243,561 would be forgiven creating a catastrophic income tax burden for him at age 75. Dckt. No. 52, pp. 10-12

After considering the matter, and for the following

---

[5] ECMC argues Debtor miscalculated his income based payment amounts because he should have used his adjusted gross income from the prior year of $65,591, not his gross.

reasons, ECMC is entitled to summary judgment as it has established that the undisputed facts even when examined in a light most favorable to the Debtor show Debtor cannot prove that repayment of his student loan debt creates an undue hardship.

## CONCLUSIONS OF LAW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (internal quotations omitted). Once the moving party has properly supported its motion with such evidence, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986); <u>First Nat'l Bank of Arizona v. Cities Servs. Co.</u>, 391 U.S. 253, 288-89 (1968); Fed. R. Civ. P. 56(e). "In determining whether the movant has met its burden, the reviewing court must examine the evidence in a light most favorable to the opponent of the motion. All reasonable doubts and inferences should be resolved in favor of the opponent." <u>Amey, Inc. v. Gulf Abstract & Title, Inc.</u>, 758 F.2d 1486, 1502 (11th Cir. 1985)(citations omitted).

**<u>11 U.S.C. §523(a)(8)</u>.**

To discharge his student loan pursuant to 11 U.S.C. §523(a)(8), Debtor must show repayment of the loan would be an "undue hardship" to him. 11 U.S.C. §523(a)(8). The Eleventh Circuit has adopted the test set out in <u>Brunner v. New York State Higher Educ. Servs. Corp.</u>, 831 F.2d 395 (2d Cir. 1987) (the "Brunner test") to determine whether repayment of the student loan debt constitutes an "undue hardship." <u>In re Cox</u>, 338 F.3d 1238, 1241-42 (11th Cir. 2003). The Brunner test requires Debtor to prove by a preponderance of the evidence each of the following factors to discharge his student loan:

   (1) Debtor cannot maintain, based on current income and living expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loan;

   (2) That additional circumstances exist indicating that this state of affairs is likely to persist for a significant

portion of the repayment period of the student loan; and

(3)  Debtor's good faith efforts to repay the loan.

In re Acosta-Conniff, 686 F. App'x 647 (11th Cir. April 19, 2017) citing Brunner, 831 F.2d at 396.  "The first prong focuses on the current ability of the debtor to repay the debt.  The second prong looks to the future to determine the unlikelihood that the debtor could become able to repay the loan.  The third prong looks to the debtor's past conduct to determine whether [his] actions in the past have manifested a good faith effort to repay that which [he] owes."  In re Acosta-Conniff, 686 F. App'x at 649.

Because Debtor carries the burden of proving each element of the Brunner test, to prevail with its summary judgment motion, ECMC only needs to show that the undisputed facts preclude Debtor from satisfying just one of the prongs of the Brunner test.  In re Kidd, 2012 WL 1820816, at *3 (Bankr. N.D. Ga. April 2, 2012)(granting summary judgment where defendants showed the undisputed facts precluded the debtors from prevailing under the prongs of the Brunner test).  The issue of whether the repayment of the student loan would impose an undue hardship is a mixed question of law and fact.  In re Mosley, 494 F.3d 1320, 1324 (11th Cir. 2007) citing In re Frushour, 433 F.3d 393, 398 (4th Cir. 2005).

### Minimal Standard of Living Prong.

The first prong of the Brunner test requires Debtor to show he cannot maintain a minimum standard of living if required to repay his student loan. Id. The first prong "does not require the debtor to live in abject poverty, but it does require more than a showing of tight finances." In re McLaney, 375 B.R. 666,674 (M.D. Ala. 2007). To prevail, Debtor must show paying the student loan debt would not allow him sufficient income to provide for his basic needs such as food, shelter, utilities, personal hygiene products, and some entertainment or recreation. In re Williams, 492 B.R. 79, 85 (Bankr. M.D. Ga. 2013).

In this case, Debtor contends his net monthly income after salary deductions and expenses is negative $343. According to Debtor's schedule J, his student loan payment is approximately $1,432 per month. Dckt. No. 1, Chap. 7 Case No. 16-11197. The last student loan payment he made was $1,500/month in 2015. Dckt. No. 1, Complaint, Ex. C (account history). Adding this student loan payment to Debtor's monthly expenses results in a negative monthly income of approximately $1,775.[6]

Debtor contends his monthly student loan repayment

---

[6] -343 + -1432 = -1775.

options are as follows:  $1,647 under the Standard Plan to pay the loan in full over 30 years; $1,496 for the first month payment under the Graduated Plan and $2,026 for his last month over 30 years; $1,732 under the Extended Fixed Plan to pay the loan in full in 25 years; $1,496 first month payment under the Extended Plan and $2,318 the last month to pay the loan in full over 25 years; and $684 under the Income Based Plan for the first month payment and $2,536 for his last month repayment with a loan forgiveness amount of $243,561 after 25 years.  Dckt. No. 48, p. 5-6.  Debtor contends he cannot make any of these payments and maintain a minimal standard of living.

However, Debtor's projected budget clearly includes expenses exceeding the "minimal standard of living" contemplated by the Brunner test.  Reviewing Debtor's salary deductions and reasonable living expenses, he can afford to repay his student loan even using Debtor's own projected loan payment amounts.[7]

First, Debtor acknowledges the $1,228/month average "other" expense "does not include any of his basic necessities."  Dckt. No. 52, ¶40.  Debtor's budget also reflects he eats out almost

---

[7]  ECMC contends the monthly loan payments offered by the Ford Program are significantly less than Debtor's numbers, but for purposes of this summary judgment motion, the Court has considered Debtor's figures.

every day averaging $372/month, which is in addition to his average monthly groceries expense of $232 and average monthly entertainment/recreation expense of $95. Currently, Debtor also contributes approximately $100/month to his adult son's savings account. In addition, the Debtor's expenses include the child support payment of $565/month that he acknowledges is no longer required. [8] By eliminating these $2,265/month [9] in expenses, Debtor's net monthly income would be $1,922. [10]

Furthermore, Debtor's net income includes a payroll deduction that exceeds the minimal standard of living threshold contemplated by Brunner. Debtor currently contributes $372 towards his retirement plan. This deduction is clearly admirable, but it is not required to provide for Debtor's basic necessities or to maintain a minimal standard of living while paying his student loan debt. See ECMC v. Acosta-Conniff, 583 B.R. 275, 280 (M.D. Ala. 2018)(noting the debtor could squeeze a couple hundred dollars out of her budget if she eliminated her $220/month voluntary retirement

---

[8] Debtor acknowledges the child support obligation ceased in May 2018. Dckt. No. 52, ¶40.

[9] Calculated as follows: $100 (Debtor's contribution to son's savings account) + $372 (meals out) + $1,228 (average "other" expenses) + $565 (child support that ceased in May 2018) = $2,265.

[10] Calculated as (-$343) Debtor's current net monthly income + $2,265 = $1,922.

contribution); In re Johnson, 543 B.R. 601, 608 (Bankr. W.D. Mo. 2015)(finding $100 monthly retirement contribution not necessary to maintain a minimal standard of living); ECMC v. Young, 376 B.R. 795, 799-800 (E.D. Tex. 2007)("While saving money for one's retirement is certainly wise, Congress, through its demanding standard, has chosen to give priority to the repayment of student loan debts").  In total, by curbing his monthly expenses by $2,265 and his payroll deductions by $372, totaling $2,637, Debtor is able to afford the repayment options he set forward and still have some additional funds sufficient to maintain a minimal standard of living.

For these reasons, based upon Debtor's own undisputed figures, ECMC has shown that Debtor cannot establish that he cannot maintain a minimal standard of living while repaying his student loan and therefore, ECMC is entitled to summary judgment.

### Additional Circumstances Show the Inability to Pay Will Persist Prong.

Under the second prong of the Brunner test, Debtor must demonstrate additional circumstances that show his inability to pay the student loan is likely to persist for a significant portion of the repayment period.  In re Mosley, 494 F.3d 1320, 1326 (11th Cir. 2007).  "Under Brunner, undue hardship does not exist simply because the debtor presently is unable to repay his or her student

loans; the inability to pay must be 'likely to continue for a significant time'. . . such that there is a 'certainty of hopelessness' that the debtor will be able to repay the loans within the repayment period." Id. "Additional circumstances" include a debtor's physical and mental disability, lack of usable or marketable job skills and lack of assets available to pay the loan. Id. at 1326-27.

In this case, Debtor clearly has marketable and usable job skills. He has been gainfully employed for years with only a brief period of unemployment. While Debtor previously had cancer and suffers from depression and atrial fibrillation, he has been able to work and maintain a substantial income. Debtor's cancerous thyroid was removed and he takes medication for this condition. Debtor also is seeing a therapist and taking medication for depression. See In re Gesualdi, 505 B.R. 330, 337(Bankr. S.D. Fla. 2013)(while debtor indicated that he has sleep apnea, Attention Deficit Disorder, depression, and anxiety, there was no evidence any of those conditions precluded him from working). Another positive factor is Debtor's age. Fortunately, Debtor has been able to maintain his employment with his marketable skills and he should be able to earn a good income for a number of years.

As an additional factor to consider, Debtor argues he is

at the top of his earning potential.   However, Debtor currently is seeking a Master's degree which potentially could lead to opportunities and advancements as well as enable Debtor to maintain his current job.    Dckt. No. 55, ¶24; Richardson Dep. p. 28. Furthermore, being at the top of one's earning potential is not "additional circumstances" sufficient to meet Debtor's burden under the second prong of the Brunner test.   In re Matthews-Hamad, 377 B.R. 415, 422 (Bankr. M.D. Fla. 2007)("[T]he fact that a debtor has a low-paying job without much upside earning potential is not enough to satisfy this prong of the Brunner test.").   In this case, Debtor does not have a low-paying job, rather, he earns sufficient income to make his student loan payments with appropriate adjustments in his budget.

Furthermore, Debtor's argument that enrolling in the Ford Program will cause him dire tax consequences does not equate to "a certainty of hopelessness" as required under the Brunner test.   At this point, it is too speculative to determine what the tax law will be in the future regarding student loan forgiveness or what events will transpire regarding Debtor's career and finances.   See In re Gesualdi, 505 B.R. 330, 346 (Bankr. S.D. Fla. 2013)("The vast majority of courts that have addressed this issue have concluded that it is speculative, at best, to guess what the tax laws will be

in 25 years."). Debtor also may have repaid all or a significant portion of the loan in this time frame, thus negating this impact.

For these reasons, ECMC has shown Debtor will not be able to establish a "certainty of hopelessness" to fulfill his student loan obligation in the future. Therefore, based upon the undisputed facts, ECMC is entitled to summary judgment as to the second prong of the Brunner test.

**Good Faith Prong.**

As to the final prong of the Brunner test, at trial Debtor must show he has made a good faith effort to repay his student loan. "Good faith is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses; his default should result, not from his choices, but from factors beyond his reasonable control." Mosley, 494 F.3d at 1327. At this point in the proceedings, upon review of the undisputed facts in the light most favorable to Debtor, the Court finds ECMC has not shown it is entitled to summary judgment as to this prong of the Brunner test.

In this case, Debtor has maintained full time employment for lengthy periods of time except for a brief period of unemployment. He has minimized some expenses by remaining in his apartment where rent is only $655/month and driving a twelve-year-old vehicle. He also has paid more than $134,000 towards his

student loan debt.

Debtor's last student loan payment was in 2015 and he has not applied for a loan repayment plan. However, at the time of his unemployment in 2015, Debtor avers he went to a website and calculated what his loan repayment options would be under the Ford Program. He thought based upon those calculations he would not be able to afford any loan payment. He did not actually apply and did not reconsider his options once he became employed. While failing to apply for a loan repayment plan through the Ford Program and missing payments is probative of Debtor's intent to repay his loan, it is not per se bad faith. See Mosley, 494 F.3d at 1327.

Considering Debtor's efforts over the years to repay this debt, his working part-time jobs, remaining in a low rent apartment, driving an old vehicle, as well as his contention that he did not, and does not, think he can afford the Ford Program, the Court finds ECMC is not entitled to summary judgment on the issue of Debtor's purported lack of a good faith effort to repay his student loan.

**Local Rule 56.1**.

ECMC further argues Debtor admitted to all the facts contained in its Statement of Facts and failed to create a material factual dispute because he failed to comply with Local Rule 56.1. Southern District of Georgia Local Rule 56.1 provides:

> **LR 56.1 Motions for Summary Judgment.**
> Upon any motion for summary judgment
> pursuant to Rule 56 of the Federal Rules
> of Civil Procedure, in addition to the
> brief, there shall be annexed to the
> motion a separate, short, and concise
> statement of the material facts as to
> which it is contended there exists no
> genuine dispute to be tried as well as
> any conclusions of law thereof. Each
> statement of material fact shall be
> supported by a citation to the record.
> All material facts set forth in the
> statement required to be served by the
> moving party will be deemed to be
> admitted **unless controverted by a
> statement served by the opposing party.**
> Response to a motion for summary judgment
> shall be made within twenty-one (21) days
> of service of the motion. See LR 7.5.

S.D Ga. L.R. 56.1 (emphasis added). "The Southern District of

Georgia's LR 56.1 only requires the [the Statement of Undisputed

Material Facts] be 'controverted by a statement served by the

opposing party.'" Bank of the Ozarks v. Kingsland Hosp., LLC, 2012

WL 5928642, at *5 (S.D. Ga. Oct. 5, 2012)(comparing N.D. Ga. L.R.

56.1 with S.D. Ga. L.R. 56.1). Like in Bank of Ozarks, the Court

has considered the facts and evidentiary support set forth in

Debtor's initial response to ECMC's Motion for Summary Judgment

(Dckt. No. 48) and in Debtor's reply (Dckt. No. 52) wherein Debtor

specifically admitted/disputed ECMC's Statement of Material Facts

and concludes ECMC is not entitled to summary judgment based upon

Debtor's purported failure to comply with this local rule. See Id.

at *4-5; Ameris Bank v. SB Partners, LLC, 157 F.Supp.3d 1356, 1360 (S.D. Ga. 2016)(considering response to the motion for summary judgment and evidence presented by the response even when respondent did not directly respond to movant's statement of material facts).

Conclusion.

To discharge his student loan debt pursuant to 11 U.S.C. §523(a)(8), Debtor must satisfy all three prongs of the Brunner test. ECMC has established that based upon the undisputed facts Debtor is unable to satisfy the first and second prongs of the Brunner test, namely Debtor is unable to establish that he cannot afford his student loan payment while maintaining a minimum standard of living and that additional circumstances exist showing his inability to pay will persist for a significant portion of the repayment period. For these reasons, ECMC's Motion for Summary Judgment is ORDERED GRANTED and Debtor's student loan debt is ORDERED excepted from discharge pursuant to 11 U.S.C. §523(a)(8).

SUSAN D. BARRETT
UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia

This 28th day of September 2018

AO 72A
(Rev. 8/82)